# OCTOBER, 1933

MRS. E. A. W. TIMMERMAN ET AL. V. BANKERS RESERVE LIFE COMPANY.

No. 6100. Decided October 18, 1933.
(63 S. W., 2d Series, 687.)

*Boyles, Brown & Scott* and *Frank G. Dyer,* all of Houston, for appellants.

Since the total amount of the principal and interest due on the premium note which matured March 6, 1926, was less than $61.06 belonging to the insured in the hands of the insurance company on that date, we respectfully submit that it was the duty of the insurance company on March 6, 1926, to apply the $61.06 to the payment of said note so as to avoid a forfeiture of the policy and that equity presumes that this was done and that there was, in fact, no default in the payment of the note due March 6, 1926. North American Acc. Ins. Co. v. Bowen (Civ. App.), 102 S. W., 163; Brady v. Coachman's Ben. Assn., 14 N. Y. Supp., 272; Royal Frat. Union v. Stahl, 126 S. W., 920; Missouri State Life Ins. Co. v. LeFevre, 10 S. W. (2d) 267; Great So. Life Ins. Co. v. Jones, 35 Fed. (2d) 122.

*Hunt & Hunt* and *H. G. Butts,* all of Houston, for appellee.

The time of payment in a life insurance policy is material and of the essence of the contract and failure to pay involves a forfeiture. A provision in notes given for a deferred premium under a life insurance policy, if not paid at maturity the policy for which they are given shall be *ipso facto* null and void, is enforceable and the period of grace contained in the statute and contract of insurance does not apply to the due date of the note. Southland Life Ins. Co. v. Hopkins (Com. App.), 244 S. W., 989; New York Life Ins. Co. v. Statham, 93 U. S., 24, 23 L. Ed., 789; Underwood v. Security Life & An. Co., 108 Texas, 381, 194 S. W., 585; Bank of Commerce v. New York Life Ins. Co., 125 Ga., 552, 54 S. E., 643; Holly v. Metropolitan Life Ins. Co., 105 N. Y., 437, 11 N. E., 507.

MR. JUDGE LEDDY delivered the opinion of the Commission of Appeals, Section B.

The Honorable Court of Civil Appeals for the First District presents certified questions for determination of the Supreme Court. The statement and questions are as follows:

"The above styled cause, which is now pending in this Court on motion for rehearing, is a suit by appellants against appellee, a Nebraska insurance corporation, to recover upon a life insurance policy issued by appellee to Newell Livingston Walker, insuring his life for the benefit of his sister, Mrs. Timmer-

man, in the sum of $2500.00. In addition to the face value of the policy, plaintiff sought to recover reasonable attorney's fees, alleged to be $500.00, and the 12% penalty for delay authorized by Article 4736 of the Revised Statutes of this State.

"The defendant answered by general demurrer, special exceptions, and general denial, and by special plea in which it averred, in substance, that the policy sued on had lapsed prior to March 7, 1926, the date of the death of the insured, because of the non-payment of a premium note which became due March 6, 1926, and that defendant under the terms and provisions of the policy was only liable to plaintiff in the sum of $760.38, same being the paid up insurance value of the policy plus $81.38 due on the annuity benefit coupons, which amount had been tendered plaintiffs and refused by them.

"At the conclusion of the evidence the parties agreed that, there being no fact issue in the case, it should be withdrawn from the jury and decided by the Court.

"After hearing the argument upon questions of law presented, the Court took the case under advisement and sometime thereafter rendered judgment in favor of defendant, limiting plaintiffs' recovery to the $760.38 tendered into Court by defendant and adjudging the costs of the suit against plaintiffs.

"The agreed statement of facts upon which the judgment was rendered shows the following facts:

"The policy sued on, which insured the life of Newell Livingston Walker for the benefit of his sister, Emma Alice Walker, who is now the appellant, Mrs. Timmerman, in the sum of $2500.00, was issued by the appellee on September 6, 1919, in consideration of the payment by the insured of a premium of $75.78, and the agreement of the insured to pay a like amount on or before the 6th day of September of each succeeding year during the term of the policy.

"All of the accruing premiums on the policy prior to September 6, 1925, were paid by the insured without reduction. When this premium became due the insured made the following request of appellee:

" 'The undersigned, the party assured under Policy No. 49442 in THE BANKERS RESERVE LIFE COMPANY, of Omaha, Neb., hereby requests that $56.84 of the Cash due 9/6/1925, be settled by premium loan.'

"This request was granted and appellee accepted a cash payment by the insured of $18.94, and three notes executed by him, payable in three, six and nine months, respectively, each note being for one-third of the balance of the unpaid premium.

"The note due in three months was paid on or before its maturity. The second note, which became due on March 6, 1926, was not paid. The insured died on March 7, 1926. These notes were all identical except as to their due dates, and each contains the following provisions:

" 'If this note is not paid at maturity, Policy No. 49442 issued by the Bankers Reserve Life Company, of Omaha, Neb., for which it is given, shall be *ipso facto* null and void, without notice to the maker hereof and without any act on the part of the Company and shall remain so until restored as provided for by the terms of said policy.'

"The insurance policy upon which suit is brought contains the following provisions:

" 'If this policy be kept in force by the payment of premiums in cash, the Company hereby guarantees to accept the annuity benefits hereto attached in reduction of the premiums as they become due on the dates indicated on said annuity benefits. Should the insured, after the first policy year, elect to pay and pay any premium semi-annually or quarterly, then and in that case a *pro rata* portion of such annuity benefit will be applicable upon payment of the premium.

" 'If the insured shall so elect at the beginning of the second policy year, the successive annuity benefits accruing under this policy will be converted into paid up additional insurance, such insurance being purchased at the company's regular single premium rate of insurance according to the attained age of the insured. The election of this option at any time other than specified above will be conditioned upon evidence of insurability satisfactory to the company.

" 'In case the insured shall leave said annuity benefits with the company the same shall be payable on presentation at any time, with compound interest at the rate of $3\frac{1}{2}$ per centum per annum for each full year such annuity benefits are left with the company; and in event of death, all annuity benefits bearing date prior to said death will be paid with interest accumulations in addition to the sum insured.

" 'The company hereby guarantees upon payment of each year's premium, beginning with the second, to credit upon this Policy an annuity as per annuity benefits hereto attached to this Policy, or in lieu thereof the Company guarantees the following options with reference to all such annuity benefits.

" 'OPTION 1. The insured may elect to pay all premiums without reduction, in which case the Company guarantees that after paying premiums in full for Fifteen Years and surrender-

ing this Policy and all attached annuity benefits to the Company, a non-participating policy paid up for life for the same face amount as the one surrendered will be issued to the insured. Or

" 'OPTION 2. The insured may elect to pay all premiums without reduction in which case the Company guarantees that after paying premiums in full for Twenty Years and surrendering this Policy and all attached annuity benefits to the Company, a non-participating policy paid up for life for the amount of $3415.00 will be issued to the Insured. Or

" 'OPTION 3. The insured may elect to pay all premiums without reduction, in which case the Company guarantees that after paying premiums in full for Twenty years and surrendering this policy and all attached annuity benefits to the Company, a non-participating policy paid up for life for the same face amount as the one surrendered will be issued to the insured and will pay to the insured, in cash, the sum of $391.40. Or

" 'OPTION 4. The Insured may elect to pay all premiums without reduction, in which case the Company guarantees that this Policy shall mature as an endowment after paying premiums in full for twenty-nine years and on surrender of this Policy and all attached annuity benefits on the first anniversary of this policy after such payments are completed the face amount hereof will be paid in cash to the Insured.'

"The guaranteed annuities of this policy are evidenced by coupons attached thereto. The following copy of coupon No. 1 is identical with each of them except for a yearly increase in the amount of the annuity:

" 'Coupon 1. On and after September 6, 1920, THE BANKERS RESERVE LIFE COMPANY of Omaha, Nebraska, will pay to the order of the insured under Policy No. 49422 Eleven & 20/100 Dollars provided all premiums due on said policy up to and including said date have been paid.

" 'Payments to the order of the Insured or Assignee, if any, at the Home Office, or upon surrender of this $11.20 annuity benefit, properly endorsed.

"When the second note became due on March 6, 1926, the annuity benefit coupons Nos. 1 to 5, were uncashed and were in the hands of the Insured and were of the accrued value of the sum of $61.06, the insured having left said benefits under the coupons with the company. The policy also contained the further provisions:

" 'If, after three full years' premiums have been paid here-

on, this policy shall lapse by default in the payment of any premium when due, then, upon surrender of this policy within one month after such default, the reserve hereon, and any existing additions hereto, shall be applied to the extension of this policy for its face amount and any existing additions hereto, for the term stated in the option in Table 'B' hereon, without further payment of premiums, but without future participation or the right to loans. Any existing indebtedness to the company hereon shall be first deducted from the reserve in determining the term of extension hereon. * * *

" 'After three full years' premiums have been paid hereon upon default in payment of any premium, if the insured has selected no other option, the Company, without action on the part of the insured, will continue this policy at a paid-up nonparticipating whole life policy for the amount stated in Table 'B' hereon plus any outstanding additions hereto. Any existing indebtedness to the Company hereon shall first be deducted from the reserve in determining the amount of paid up insurance.'

"At the time of the Insured's death on March 7, 1926, the accrued reserve on said policy as shown by Table 'B' was sufficient, if applied to the extension of said policy as term insurance, to carry it as term insurance for the face value for 11 years and 285 days. The insured did not, prior to his death on March 7, 1926, surrender the policy to the Insurance Company and demand that said policy be converted to term insurance. Within 30 days after March 6, 1926, Mrs. Timmerman, the beneficiary, demanded of the insurance company that it pay her the full face value of the policy, which demand was refused.

"At a former day of this term we affirmed the judgment of the Court below. While the writer has no doubt of the soundness of the conclusion reached in our opinion affirming the trial court's judment, the majority of the Court are not satisfied that the judgment of affirmance is correct, and deem it advisable to certify for your decision the following questions:

"No. 1. Was it the duty of the Insurance Company on March 6, 1926, when the second note became due and was unpaid, to apply the $61.06, representing the accrued value of the first five annuity benefit coupons, to the payment of said note so as to avoid a forfeiture of the insurance policy in the absence of any instructions in this connection from the insured?

"No. 2. If the Insurance Company owed no such duty as is inquired about above, was the beneficiary entitled to the face

value of the policy upon her demand for same by virtue of the extended insurance provision of the policy, or had the company the right under the automatic insurance provision of the policy quoted above, to continue the policy as a paid-up non-participating whole life policy for the amount stated in Table 'B' as it has attempted to do in this case?"

At the time the premium note became due on March 6, 1926, Walker had exercised the option given him in the policy with reference to the annuity benefits accruing thereunder, which was to leave such benefits with the company to draw compound interest at the rate of $3\frac{1}{2}\%$ per annum, subject to his right of withdrawal at any time. The company, therefore, had in its possession on said date funds belonging to him which he was entitled to receive on demand. In this situation appellants contend that it was the duty of appellee to apply to the payment of the note due by Walker on March 6 sufficient of the annuity benefits to discharge the same and thereby prevent a forfeiture of the policy.

■ The rule seems to be well established that a life insurance company will not be permitted to insist that a policy has been forfeited for non-payment of premium if at the time such premium becomes due it has in its possession dividends presently payable belonging to the insured which are sufficient to discharge the premium at its maturity. 19 Am. & Eng. Encyc. of Law (2d Ed.), p. 50; C. J., vol. 32, p. 1308.

The rule announced by the above standard texts seems to be supported by the overwhelming weight of authority. In 17 Ann. Cas., at page 503, the cases on this subject are reviewed at length and the general rule deducible from the authorities is declared to be as follows:

"It may be laid down as the general rule gathered from the cases reviewed in this note that, subject to some exceptions, as will be hereafter seen, that, if an insurer has in its hands sufficient funds presently due the insured to pay an assessment or premium upon his policy when due, it is the former's duty to apply the same so as to prevent a forfeiture of the policy."

The Supreme Court of Arkansas applied this rule in the case of Reliance Insurance Co. v. Hardy, 144 Ark., 190, 222 S. W., 12. It appeared in that case that the insurance company had issued two policies to Hardy, one a health and the other a life policy. At the time the premiums became due on the life policy the company was indebted to Hardy under the health policy for an amount sufficient to pay the premium on the former policy. The court denied the insurance company's

plea that it was under no duty to apply the amount due Hardy to the premium due on the life policy. In passing on this question the court said:

"Appellant's contention cannot be sustained for the reason that the undisputed evidence shows that on November 3, 1917, it had the sum of $20 in its hands belonging to Hardy, which sum exceeded the amount that was then due the appellant for the premium on the policy in suit. It is of no consequence that this fund accrued to Hardy under the provisions of a different policy from that in suit. The policies were issued on the same parties; but even if that were not true, and if the appellant had in its possession funds belonging to Hardy derived from any source whatsoever, it was the duty of the appellant, in the absence of instructions from Hardy that he desired the use of the funds for some other purpose, to appropriate the same for the payment of his premium when it became due in order thereby to prevent forfeiture of the policy."

In the case of Northwestern Mutual Life Insurance Co. v. Fort's Administrator, 82 Ky., 269, a similar ruling was declared by the use of this language:

"There are, therefore, two reasons why the forfeiture of the entire policy should not be enforced. In the first place, having funds of the insured in its possession more than sufficient to pay the annual interest which it has not accounted for otherwise, the company should be held to have applied the other to the payment of the interest, consequently there has been in legal contemplation no default on the part of the assured in respect to the annual payment of interest."

In the case of Franklin Life Ins. Co. v. Wallace, Administrator, 93 Ind., 7, the court followed the rule and cited with approval the case of Girard Life Ins. Co. v. Mutual Life Ins. Co., 97 Pa., 15, in which it was held that a mutual insurance company having in its hands dividends sufficient to pay the premium cannot insist upon a forfeiture of the policy.

In Chicago Life Insurance Company v. Warner, 80 Ill., 410, the rule on this subject is announced to be:

"It is conceded by the company, in its communications with appellee, that there was due her, on the policy, in dividends, the sum of $6.40, which would be due on the same day that the premium was payable.

"This amount was in the hands of the company, and while it would have the right to apply the money in payment of the indebtedness due from appellee on premium, the company had

no authority to add it to the policy, unless expressly authorized by her. * * *

"The company never offered to pay the money to appellee. It saw proper to retain it. And as appellee was in no manner indebted to the company, except on the annual premium, the money retained by the company must be regarded as a payment upon the premium."

In the case of Equitable Life Assurance Soc. of U. S. v. Pettid, 40 Ariz., 239, 11 Pac. (2d) 833, it was decided that if the accrued dividend on a life policy is sufficient to pay premium installments due, the insurer must make application of such dividends to the installments rather than permit the policy to lapse.

With practical unanimity the courts throughout the country declare it inequitable for an insurance company to forfeit a policy when it holds funds belonging to the assured which are presently payable. McNaughton v. Des Moines Life Ins. Co., 140 Wis., 214, 122 N. W., 164; Fogg v. Morris Plan Ins. Soc., 115 Misc., 491, 188 N. Y. S., 867; Union Central Life Ins. Co. v. Caldwell, 68 Ark., 505, 58 S. W. (2d) 355; Hull v. N. W Mutual Life Ins. Co., 39 Wis., 397; Van Norman v. N. W. Mutual Life Ins. Co., 51 Minn., 57, 52 N. W., 988; Manhattan Life Ins. Co. v. Hoelzle, Fed. Cas. No. 9025, 8 Ins. Law Journal, 226; Phoenix Ins. Co. v. Doster, 106 U. S., 30; National Life Ins. Co. of Washington, D. C., v. Sparrow, 151 Miss., 387, 118 So., 195; North v. National Life & Accident Ins. Co. of Nashville, Tenn. (Mo. App.), 231 S. W., 665; Security Life Ins. Co. of America v. Matthews, 178 Ark., 775, 12 S. W. (2d) 865; Supreme Lodge v. Walker et al., 181 Ark., 407, 26 S. W. (2d) 94; Caywood v. Supreme Lodge, 171 Ind., 410, 86 N. E., 482, 23 L. R. A. (N. S.) 304, 17 Ann. Cas., 503; Great Southern Life Ins. Co. v. Jones, 35 Fed. (2d) 122; Haas v. Mutual Life Ins. Co., 90 Neb., 808, 134 N. W., 937; Ann. Cas. 1913 b, 1919.

There are several cases decided by Courts of Civil Appeals of this State in which a similar principle has been applied in one way or another. In the case of North American Accident Ins. Co. v. Bowen (Civ. App.), 102 S. W., 163, in which writ of error was denied by the Supreme Court, it appeared that the insurance company was liable to Bowen for a prior accident, but the extent of the liability had not been determined. The minimum amount for which the company could be liable, however, was sufficient to pay the remaining premium notes owed by Bowen. The court held that it was the duty of the company

to apply so much of the sum due the insured to the unpaid notes as was necessary to prevent a forfeiture of the policy.

Similarly, the Fort Worth Court of Civil Appeals, in the case of Royal Fraternal Union v. Stahl (Civ. App.), 126 S. W., 920, determined that it was the duty of the insurance company to apply benefits which had accrued under a certificate to the payment of the premium owed by the assured.

The same principle was announced in the case of Missouri State Life Ins. Co. v. LeFevre (Civ. App.), 10 S. W. (2d) 267, in which the court said:

"The law does not favor forfeitures, and will decline to enforce them whenever it is against equity and good conscience to do so. We think it would be inequitable and unjust, under the circumstances of this case, to hold the insurance forfeited for non-payment of the premium due April 8th, when appellant, in effect, had in its possession disability funds belonging to the assured sufficient to pay said premium.

■ It is true that a premium on an insurance policy is not a debt in the sense that the insurance company can enforce payment of the same. Cooley's Briefs on Insurance (2d Ed.), p. 1625; Worthington v. Charter Oak Life Ins. Co., 41 Conn., 372, 19 Am. Rep., 495; Goodwin v. Massachusetts Mutual Life Ins. Co., 73 N. Y., 480.

Where, however, the assured executes his note for the premium, the same constitutes a debt which in law he can be compelled to pay. Security Life & Annuity Co. v. Costner, 149 N. C., 293, 63 S. E., 304; Johnson v. Supreme Camp W. O. W., 119 Mo. App., 98, 95 S. W., 951.

In the original opinion rendered by the Court of Civil Appeals in this case it seems that the case was decided in favor of the insurance company upon the authority of the decision of the Supreme Court in Southland Life Insurance Company v. Hopkins (Com. App.), 244 S. W., 989. An examination of the case relied upon shows that the point here presented was not involved in that case. The question there determined was that a premium note which had matured more than a month after the due date of the premium could not be extended under a thirty day grace privilege, and that the policy was forfeited immediately upon default being made in the payment of the premium note. There can be no question of the soundness of that holding. It does not, however, decide the question involved in the case before us. The insurance company in that case at the time the premium note became due, did not have in its possession any funds belonging to the insured, which it could have

applied to the payment of the premium note; hence the question as to whether or not it was the duty of the company to apply funds belonging to the insured to the payment of the premium note, so as to prevent a forfeiture of the policy, was neither presented nor decided.

Appellants do not insist in this case that Walker had thirty days grace after the maturity of the note on March 6, 1926. In fact they concede he had no such privilege. Their contention is that since it was the duty of the insurance company to apply the annuity benefits to the payment of the note when it became due, no default in its payment occurred, and therefore no forfeiture of the policy ever took place.

The conclusion reached by us requires the first question certified to be answered in the affirmative. It becomes unnecessary to answer the second question, as we are requested to answer the same only in the event a negative answer should be given to the first question.

We therefore recommend that the first question certified be answered in the affirmative and that no answer be made to the second question.

Opinion of the Commission of Appeals answering certified question adopted and ordered certified.

C. M. CURETON, Chief Justice.